**William L. ROBERTS, Plaintiff–Appellant,**

v.

**SEPARATORS, INC., Defendant–Appellee.**

**No. 98–2670.**

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 4, 1999.

Decided March 24, 1999.[1]

---

1. Oral argument was not held because of severely inclement weather, and the case was submitted on the briefs.

**450**

Michael C. Kendall (submitted), Indianapolis, IN, for Plaintiff–Appellant.

Mark R. Waterfill (submitted), Leagre, Chandler & Millard, Indianapolis, IN, for Defendant–Appellee.

Before FLAUM, ROVNER and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff William L. Roberts appeals the district court's grant of summary judgment to Separators, Inc. in his Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 215 et seq., and Employee Retirement Income Security Act (ERISA) 29 U.S.C. § 1001 et seq., suit. The district court found that Roberts was unable to prove that Separators' proffered reasons for dismissing him were pretextual. For the reasons set out below, we affirm Chief Judge Barker's decision.

## FACTS

In October 1994, the plaintiff, then sixty-one years old, was hired as a machinist by the defendant corporation, a manufacturing concern which refurbishes parts on dairy industry machinery. Shop Foreman Dan Goss, who was aware of the plaintiff's age, interviewed and hired the plaintiff. Roberts told Goss when he was hired that he intended to work until age 70.

The plaintiff's first months at work went well—in January 1995, Roberts received an excellent performance review and a $1.03 per hour raise. According to the plaintiff, everything at work was copacetic until October, when he went on vacation. While Roberts was away, the defendant corporation hired a new, younger machinist. When Roberts returned, Goss and Kenneth Army, Separators' General Manager, told him that he was being fired for telling three fellow employees that he could retire at any time, and generally having a bad attitude. Roberts believed he was being terminated because of his age, and told Army this. Army denied it, and told Roberts there were "other problems" although neither Goss nor Army specified what they were. After the meeting, Roberts requested and received a letter of dismissal from Separators. The letter stated that Roberts had been dismissed, but acknowledged that he committed no "misconduct."

After being fired, the plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging age discrimination and was subsequently issued a Right to Sue letter, which led him to commence this action in the Southern District of Indiana.

## ANALYSIS

### I.

The district court's grant of summary judgment turned on its finding that there were no genuine issues of material fact about whether Separators' proffered reasons for dismissing Roberts were pretextual. We review that decision de novo, drawing all inferences in the light most favorable to the non-moving party—here, the plaintiff. *Biolchini v. General Electric Co.*, 167 F.3d 1151, 1154–55 (7th Cir.1999). In employment discrimination cases, we apply this standard with "added rigor" before granting summary judgment. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993).

### A.

To establish a prima facie case of age discrimination, Roberts must meet all four prongs of the familiar *McDonnell*

*Douglas* test. He must show: (1) that he was in the protected age group; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir.1998).[2]

▮▮▮ If Roberts meets this test, the burden shifts to the defendant to articulate legitimate, nondiscriminatory reasons for its decision to fire the plaintiff. If the defendant advances such reasons, the burden then returns to the plaintiff to produce evidence from which a rational fact-finder could infer that they are pretextual, and merely a front for discrimination. *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir.1994).[3]

Both sides glossed over the prima facie test in their briefs, and we will not go into overly detailed analysis here. Roberts clearly satisfies the first, third and fourth prongs of the prima facie test. For our analysis, the only relevant question is whether Roberts was meeting his employer's legitimate work expectations.

▮▮▮ Roberts, of course, asserts that his performance was up to par. He points to his pay raise, the favorable review he received at first, his claim that he was never specifically told of his professional shortcomings, and the absence of any complaints about the quality of his work in his employment file. On the other hand, Separators presented evidence in its Rule 56 motion that the plaintiff was not fulfilling the expectations it had of him. Although we are not overwhelmed by Roberts's evidence, because this is a prima facie case

with minimal burdens, the plaintiff's self-serving statements "may create a material dispute about … [his own] ability." *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992). Indeed, even if we are not sure that Roberts meets the requirements of the second prong, "this court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a prima facie case." *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149 (7th Cir.1996); *see also Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 135 (7th Cir.1985) ("The prima facie threshold is no longer a relevant issue once the defendant has come forward with evidence of legitimate reasons for its actions that would rebut a prima facie showing of discrimination."). Thus, instead of weighing Separators' evidence in the context of the plaintiff's prima facie case, we prefer to consider it in deciding whether the defendant can establish legitimate, nondiscriminatory reasons for the firing, because the analysis often dovetails. *See Plair v. E.J. Brach & Sons*, 105 F.3d 343, 347 (7th Cir.1997). Accordingly, we move on to the next area of the *McDonnell Douglas* burden shifting test.

### B.

▮▮▮ The burden now moves to the defendant to offer legitimate, nondiscriminatory reasons for firing Roberts. The company offers two—that Roberts was performing poorly, and that he had a bad attitude.

The company claims that Roberts's work performance declined after an initial period of excellence. In particular, it points to an incident where the plaintiff's poor work

---

**2.** We analyze both the ADEA and ERISA claims under the same standards. *See Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297 (7th Cir.1996).

**3.** This quantum of proof is only applicable to defeat a motion for summary judgment. The plaintiff ultimately bears the burden of prov-

ing that age discrimination was the determining factor in the employer's action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Senner v. Northcentral Technical Coll.*, 113 F.3d 750, 755 (7th Cir.1997).

ruined certain expensive equipment on a particular project, costing the defendant between $5,000 and $6,000. Separators also alleges that an unrelated drilling error by the plaintiff resulted in a loss of over $5,500. The defendant also contends that Roberts missed part sizes, made dimensions too loose and made other mistakes, but gives no specific details about these mishaps.

In addition to these physical damages, the defendant cited the plaintiff's poor attitude as a reason for the firing. Roberts allegedly badmouthed well-respected co-workers, called his supervisor a "piss poor shop foreman," and repeatedly stated that the company was poorly run. Separators also claims that Roberts frequently told co-workers that he could retire at any time he wanted.

### C.

■ Once an employer articulates legitimate, nondiscriminatory reasons for the employee's termination, the employee must present enough evidence to support a finding that the stated reasons are pretextual. *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir.1996). Because the defendant offered two reasons for the firing, the plaintiff must show that both were pretextual in order to reverse the district court's grant of summary judgment. *Id.* at 920. We examine the reasons in turn.

■ In assessing whether Roberts can meet his burden of showing pretext, we note that this is a "common actor" situation, and thus a presumption of nondiscrimination arises from the facts of this case. *Chiaramonte v. Fashion Bed Group*, 129 F.3d 391, 399 (7th Cir.1997); *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir.1996). The common actor presumption exists when an employee in a protected class "is hired and fired by the same decision-maker in a relatively short time span." *Chiaramonte*, 129 F.3d at 399. In *Chiaramonte*, the decision-maker hired the plaintiff when he was 52

years old, retained him after a merger, and two years later fired him. Holding that the common actor presumption applied, the court noted, "[i]t is highly doubtful that a person who hires an employee in the protected age group ... would fire that same employee ... as a result of a sudden 'aversion to older people.'" *Id.* (quoting *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 175 (8th Cir.1992)). Here, Goss hired Roberts when he was 61 and fired him only one year later. Because our observation in *Chiaramonte* is equally salient here, we apply the common actor presumption, and thus note that "a strong inference exists that discrimination was not a determining factor for the adverse action taken by [the] employer." *Chiaramonte*, 129 F.3d at 399 (citation omitted).

This presumption is not irrebuttable. We still must examine the merits of the plaintiff's claim. First, we look at whether Roberts presents any evidence that undermines the credibility of the poor performance ground for firing. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir.1993). The relevant inquiry here is not whether Roberts actually damaged Separators' equipment, but rather whether the company honestly believed he did. *Sirvidas v. Commonwealth Edison*, 60 F.3d 375, 378 (7th Cir.1995).

■ Thus, unlike the prima facie case, an employee's general averments that he performed adequately are insufficient to create a genuine issue of fact, *id.* at 378, and Roberts's denial of ruining or damaging parts is not enough to preclude summary judgment. He must produce some independent evidence showing that the company's motives are not believable. Roberts points to such evidence; he does not rely on his own statements alone. He maintains that Army, the plant general manager, told him that "he was not to blame for the damage to the [equipment]" when Roberts told him that another employee had used the machine after him.

This alleged statement by Army, overlooked by the district court, goes beyond

the usual self-congratulatory claims that a worker believed he was competent. Viewing this in the light most favorable to the non-moving party, as we must on a motion for summary judgment, it is an admission that the defendant's shop management did not actually believe Roberts's work was shoddy. It is the kind of statement that tends to show that Separators did not honestly believe the reasons it offered for its actions. *See McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992). This is a material fact—one that could influence the outcome of this case if it went to the jury. *See Griffin v. City of Milwaukee*, 74 F.3d 824, 827 (7th Cir.1996) (citation omitted). Moreover, we cannot resolve this particular conflict "without deciding which side to believe." *Wolf*, 77 F.3d at 922. Thus, it is sufficient to create a genuine issue as to whether or not Separators' belief that Roberts performed inadequately was pretextual.

■ This does not mean, however, that Roberts wins—he must still produce evidence that the defendant did not actually believe that he had a poor work attitude. It is not enough for him to simply prove that he did not make the alleged statements which the Separators thought amounted to his bad attitude—he must prove that the defendant did not honestly believe he had made them. *See Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1304 (7th Cir.1991) (court's responsibility is not to determine whether alleged acts occurred, but whether the employer's belief was honestly held). Where an employer has honestly described the motivation behind its decision, that decision is not a pretext for discrimination just because the plaintiff asserts the defendant's beliefs were inaccurate. *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559–560 (7th Cir. 1987).

Roberts cites two factors to show that the "bad attitude" was pretextual. First, he claims that it makes no sense to give an employee with an alleged attitude problem a sizable raise and a positive performance review. We agree that, in certain circumstances, such events could show pretext. *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 15, 19 (7th Cir.1987) (extremely good review two months before firing relevant to showing pretext), *overruled on other grounds by Coston v. Plitt Theatres*, 860 F.2d 834, 836 (7th Cir.1988); *see also Barnhart v. Mack Trucks, Inc.*, 157 F.R.D. 427, 432 (N.D.Ill.1994), *aff'd*, 52 F.3d 328 (7th Cir.1995) (unpublished order). However, here the performance review and raise relied on by the plaintiff came ten months prior to the employment decision, and only two months into his tenure at Separators. Separators based its belief that Roberts had a bad attitude on a number of specific instances occurring after the raise and review. Viewed in light of the inference of no discrimination arising from the common actor situation, we do not believe the plaintiff can show that the existence of a single positive performance review establishes that the later decision to fire him was pretextual.

The plaintiff's second, and final, assertion is that because his termination letter indicated that there was "no misconduct" on his part, the defendant's claim that he had a bad attitude was pretextual. Even drawing all inferences in the light most favorable to Roberts, this is too great a reach. The words "misconduct" and "bad attitude" are not synonymous. Misconduct connotes official impropriety or wrong behavior, while a bad attitude ordinarily signifies petulance or recalcitrance. To suggest that by not using the former the defendant somehow absolved the plaintiff of the latter strains credulity. But that is, in essence, what plaintiff argues in order to show that the defendant's proffered reason for the discharge—that Roberts had a bad attitude—was pretextual. Moreover, we have previously held that similar letters do not evince any sign of pretext. *See Schultz v. General Elec. Capital Corp.*, 37 F.3d 329, 335 (7th Cir.1994). We see no reason to depart from that holding here.

## II.

Although we disagree with part of the district court's analysis, its ultimate conclusion was correct. Accordingly, the grant of summary judgment to the defendant is

AFFIRMED.