**Renard W. PEYTON, Plaintiff,**

v.

**OTIS ELEVATOR COMPANY, Defendant.**

**No. 97 C 8134.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 14, 1999.

Weil and Associates, P.C., Northbrook, IL, for plaintiff.

Perry C. Rocco, Robert A. Glaves of Menges, Mikus and Molzahn, Chicago, IL, for defendant.

## MEMORANDUM AND OPINION ORDER

SHADUR, Senior District Judge.

Renard Peyton ("Peyton") has sued his ex-employer Otis Elevator Company ("Otis"), asserting that Otis violated the Americans with Disabilities Act ("ADA," 42 U.S.C. §§ 12101–12117 [1]) (1) by terminating his employment because of his asserted disability of alcoholism, (2) by not accommodating that claimed disability and (3) by failing to rehire him because of that claimed disability. Otis now moves for summary judgment under Fed.R.Civ.P. ("Rule") 56.

Both sides have complied with this District Court's local rules that at the time of the parties' filings were General Rules 12(M) and 12(N), but that have respectively been redesignated as LR 56.1(a) and LR 56.1(b) effective September 1, 1999 in compliance with the directive that all District Courts' rules must be renumbered to conform to the numbering of the Rules to which they relate.[2] Otis' Rule 56 motion is now fully briefed and ready for decision.

For the reasons set out in this memorandum opinion and order, the motion is granted and this action is dismissed.

### Summary Judgment Standards

Familiar Rule 56 principles impose on Otis the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir.1997)). While "this general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue" (*McCoy v. WGN Continental Broad. Co.*, 957 F.2d 368, 370–71 (7th Cir.1992)), that does not negate the potential for summary judgment in cases where a movant plainly satisfies the Rule 56 standards (*Washington v. Lake County*, 969 F.2d 250, 254 (7th Cir.1992)). In those terms summary judgment is appropriate if the record reveals that no reasonable jury could conclude that Peyton was treated in a statutorily prohibited discriminatory fashion (see *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir.1996) and cases cited there). And as the ensuing discussion demonstrates, that standard dooms Peyton's claims.

What follows in the *Facts* section (and in the later factual discussion) is culled from the parties' submissions. And as with every summary judgment motion, this Court accepts nonmovant Peyton's version of any disputed facts where his position is arguably supported by the record.

---

1. Further ADA citations will take the form "Section—," using the Title 42 numbering rather than ADA's internal section numbering.

2. LR 56.1(a) and (b) are designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to Otis' LR 56.1(a) statement as "O. 56.1(a) ¶ __" and to Peyton's LR 56.1(b) response as "P. 56.1(b) ¶ __." Citations to any of the parties' other submissions will also use the "O." and "P." designations.

*Facts*

Otis first hired Peyton in 1991 but terminated his employment that same year because of unexcused absences (O.56.1(a) ¶¶ 4–6). Peyton was hired again by Otis on February 26, 1997 as an elevator construction helper (*id.* ¶ 3) At that time Peyton knew of Otis' policies that all employees must notify Otis and call off of work when they are going to be absent or late and that unexcused absences could result in termination (*id.* ¶¶ 7–9)

On March 21 and April 4, 1997 Peyton failed to appear for work and did not phone Otis to call off of work (*id.* ¶ 10). Peyton consequently received an oral warning for absenteeism for the first infraction and a written warning for the second (*id.* ¶¶ 11–12). At some point during the same time frame Peyton also met with an Otis field operations manager who told him that more unexcused absences would result in Peyton's termination.[3] At that meeting the manager had a letter of termination in his hand, but it was torn up after the oral warning (O.56.1(a) Ex. 3 ("Peyton Dep.") 64). Even though the manager specifically asked Peyton "what the problem was, [ ] I told him I can't tell him. I couldn't tell him" (*id.*).

On April 29, 1997, less than a month after his second unexcused absence, Peyton failed to appear for work on time, but he says that he called off of work by 10 a.m. (P. 56.1(b) ¶ 10). Over the phone he told Otis that the reason for his absences was that "he couldn't stop drinking" (P. 56.1(b) ¶ 17). That was the first time that Otis had notice that Peyton might have a condition that could possibly be labeled as a disability (O.56.1(a) ¶ 16). That same day Otis terminated Peyton's employment (*id.* ¶ 14).

Peyton also claims that after he was terminated he requested an accommodation from Otis by calling the company to seek treatment for his drinking problem, and that Otis referred him to a treatment center (P. 56.1(b) Ex. A at 74). Peyton received inpatient treatment from that center, plus outpatient treatment from another facility (*id.* at 87–88). During the summer of 1997, after the completion of his inpatient care and during his outpatient treatment, he reapplied to Otis (*id.* at 100–02) but Otis declined to rehire him (O.56.1(a) ¶ 22).

*Positions of the Parties*

Otis claims Peyton was terminated and not rehired because of his unexcused absences, while Peyton asserts both decisions were reached solely on account of his alcoholism. Peyton further claims that Otis had a duty to accommodate his presumed disability once Otis became aware of its existence.

As this Court has observed in *Tomasello v. Delta Air Lines, Inc.*, 8 F.Supp.2d 1090, 1092 (N.D.Ill.1998) (quotation marks, footnote and citations omitted), ADA's general prohibition against disability discrimination[4] has been separated into two categories:

1. claims alleging discrimination under the specific terms of the statute by failing to make reasonable accommodations for known disabilities; and

2. claims charging disparate treatment as between disabled and nondisabled employees.

Peyton's first and third ADA claims, which are in the second category, will be discussed in tandem while his second claim,

---

**3.** Peyton admits that during that meeting he was told (P. 56.1(b) ¶ 15):

And, you know, I got to do like everybody else. If you miss, I got to terminate you.

Although Otis asserts that Peyton was more explicitly warned that one more absence would result in his termination (O.56.1(a) ¶ 15), for summary judgment purposes Peyton's just-quoted version will be credited.

**4.** Section 12112 reads:

No covered entity shall discriminate against a qualified individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

which is in the first category, will be discussed last.

### Disparate Treatment Claims

Peyton's first and third claims are respectively that he was fired and was not rehired because he is an alcoholic. Though alcoholism is a presumed disability for ADA purposes,[5] nevertheless an employer "may hold an employee ... who is an alcoholic to the same qualification standards for ... job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the ... alcoholism of such employee" (Section 12114(c)(4)).

■ Hence "so long as the reason for discharge was for conduct that any person would have been disciplined for doing, the fact that alcoholism may have caused the conduct does not lead to an ADA violation" (*Carroll v. Illinois Dep't of Mental Health and Developmental Disabilities*, 979 F.Supp. 767, 770 (C.D.Ill.1997)). Peyton's alcoholism thus does not transform unexcused absences into acceptable ones. But if Otis actually terminated Peyton's employment or did not rehire him *on the basis of his disability*, Otis would be liable under ADA.

■ To evaluate the existence or nonexistence of a prima facie case for disparate treatment under ADA, a court may employ the familiar *McDonnell Douglas* approach imported from other employment discrimination statutes. For that purpose Peyton would have to "prove[6] that (1) he is a member of a protected class; (2) his work performance met the employer's legitimate

job expectations; (3) his employment was terminated; and ... (4) employees not in the protected class were treated more favorably" (*DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir.1995) (footnote omitted)).

But there is no need to go through that formulation here. Like many others, this Court has often made observations in the employment discrimination context like those it voiced in *Moore v. NutraSweet Co.*, 836 F.Supp. 1387, 1395 (N.D.Ill.1993) (quotation marks and corresponding case citation omitted):

> [T]he plaintiff's prima facie showing in these cases frequently cannot be analyzed wholly discretely from the plaintiff's showing of pretext, so that it is preferable to collapse the inquiry and focus on the showing of pretext, a position that our Court of Appeals also has taken on occasion (see, e.g., its decision affirming this Court in *McCoy*, 957 F.2d at 372).

And our Court of Appeals has similarly continued to follow the approach, where appropriate, of jumping ahead to the ultimate discrimination question rather than focusing on the prima facie case, even when it is questionable whether plaintiff has met the latter requirement. This opinion thus turns directly to whether Peyton has demonstrated that Otis' stated reasons for terminating his employment and not rehiring him were a pretext for disability-based discrimination.

---

5. On more than one occasion our Court of Appeals has presumed, though it has never expressly held, that alcoholism is a disability under ADA (see, e.g., *Duda v. Board of Educ.*, 133 F.3d 1054, 1059 n. 10 (7th Cir.1998)). Even though *Albertsons, Inc. v. Kirkingburg*, ── U.S. ──, 119 S.Ct. 2162, ── L.Ed.2d ── (1999) has more recently narrowed most prior perceptions of what can be considered an actionable disability under ADA, it would seem that the statute itself acknowledges alcoholism as a disability by the very inclusion of Section 12114(c)(4). In any event, the rest of the discussion in this opinion will use the term "disability" without such qualifiers as "presumed."

6. At this summary judgment stage, of course, Peyton need not "establish" or "prove" or "show" anything. Instead he must merely demonstrate the existence of a genuine issue of material fact to defeat Otis' summary judgment motion. Although this opinion will nonetheless most frequently employ one of those quoted terms because that is the terminology used by the cited cases, this Court has consistently imposed that lesser burden on Peyton in testing his claims.

■ *McCoy,* 957 F.2d at 372 (citations and quotation marks omitted) sets out Peyton's task on the pretext issue:

> To establish pretext, an employee must ultimately show by a preponderance of the evidence either (1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence. Where, as here, the plaintiff attempts to show the employer's proffered rationale is incredible, he need not present *any* direct evidence of discrimination. As this court has explained, a plaintiff may simply attack the credibility of the employer's proffered reason for termination. . . .

If the proffered reason is not in fact incredible, "general averments" will not satisfy Peyton's burden, and he "must produce some independent evidence showing that the company's motives are not believable" (*Roberts v. Separators, Inc.,* 172 F.3d 448, 452 (7th Cir.1999)).

*Wrongful Termination Claim*

■ As the *Facts* section has set out, it is undisputed that before his discharge Peyton had three unexcused absences that he knew could result in his termination. Otis ascribes Peyton's firing to those absences, supporting that contention with the affidavit of Michael Schwalbach together with the documentation of warnings given to Peyton in that respect (O.56.1(a) Ex. 4 ¶¶ 5, 7 and attached exhibits). Otis has also provided records documenting the firing of other employees for absenteeism (O.56.1(a) Ex. 3A).

Because Otis has thus offered a valid and far from incredible reason for the termination,[7] Peyton must show that the reason was pretextual. But Peyton merely cites his "belief" that he was terminated on account of his alcoholism (see P. 56.1(b) ¶¶ 20–21, Peyton Dep. 114–17).[8] As already stated, *Roberts* teaches that such "general averments" are insufficient to create a genuine issue of material fact. While Otis did learn of Peyton's alcoholism on the day he was discharged,[9] that same day marked his third unexcused absence—after he had already been warned that any repetition meant his job. Hence the timing of Peyton's termination casts no suspicion on Otis' motives.

*Failure–To–Rehire Claim*

■ To rebut Otis' contention that Peyton was not rehired because of his prior record of absenteeism, he again points to nothing in the record, instead merely reciting his own belief that Otis' refusal to take him back stemmed from its having learned that he is an alcoholic (P. 56.1(b) ¶ 22). Again that conclusory assertion does not satisfy the need to show that Otis' stated reason is a mere pretext.

But Peyton argues that because he had received treatment for his alcoholic disability, his prior absenteeism (induced by that very alcoholism) was no longer relevant. Section 12114(c)(4) precludes such an argument because it does not require an employer to give any special concessions to misconduct caused by drugs or alcohol (see *Thomas v. Mississippi State Dep't of*

---

7. Except to say that three absences are not necessarily "excessive," Peyton does not quibble much with the fact that his absenteeism was a valid ground for termination (P.Mem. 6).

8. In an effort to attack Otis' credibility, Peyton also contends that (1) he told Otis of his alcoholism before his termination (P.Mem. 6) and (2) an Otis supervisor allegedly said that "anybody over 45 got to go" (Peyton Dep. 115). Neither of those is relevant to the issue of credibility. First, if mere notice of a presumed disability alone were enough to cast doubt on a proffered reason for termination,

almost no ADA cases would ever be decided on summary judgment—and the cases in this area of law dispel any such notion. Second, while the statement might be probative if this were an Age Discrimination in Employment Act case, it has no bearing on the question whether Otis fired Peyton because he was an alcoholic.

9. For summary judgment purposes it will be assumed that Peyton's statement that when he begins to drink he "can't stop drinking" put Otis on notice that Peyton was an alcoholic (P. 56.1(b) Ex. A at 58).

*Health,* 934 F.Supp. 768, 773–74 (S.D.Miss. 1996), holding an employer not liable under ADA for its failure to rehire a former employee because of his poor pretermination performance caused by his drug addiction, even though the employee had since received treatment).

Peyton's claim is further undercut by the framing of the second prong of the prima facie case in the past tense: Peyton has to demonstrate that "his work performance *met* the employer's legitimate job expectations" (*DeLuca,* 53 F.3d at 797) (emphasis added)). Not having met those expectations in the past, Peyton is not now accorded the right to demonstrate his current capacity to satisfy his employer (see *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir. 1995) (emphasis in original) ("qualified individual with a disability" requirement under ADA refers to that individual's present ability, not to his "*future* ability to perform the essential functions of his position").

■ Nor can this failure–to–rehire claim be viewed as a failure by Otis to accommodate Peyton. As *Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666 (7th Cir.1995) has put it, " 'A second chance' ... is not an accommodation, as envisioned in the ADA." Just as in *Siefken,* Peyton is not now asking for an accommodation within the contemplation of ADA—instead he admits he has already had treatment—but simply seeks "another chance to allow *him* " to fulfill Otis' legitimate job expectations (*id.* at 666–67).

*Summary*

It is clear that Peyton has not met his summary judgment burden of showing some genuine issue of material fact as to either his wrongful-termination or failure-to-rehire claim. Both of those claims fail.

*Failure–To–Accommodate Claim*

■ *Best v. Shell Oil Co.,* 107 F.3d 544, 547–48 (7th Cir.1997) teaches that if Peyton is to prevail on his remaining claim via the prima facie case approach, he must establish (1) that he had a "disability" as defined by ADA, (2) that Otis was aware of

that disability and (3) that he was "qualified" for the position in question, with or without reasonable accommodations. But once more the prima facie analysis is not necessary because Otis has put forth a valid and non-discriminatory reason for terminating Peyton and because that reason existed before Otis had any notice of disability. Peyton's problems with getting himself to work had expressly put his employment at risk, and ADA's plain language dictates that an employee's alcoholism does not give him a reprieve—in this case an accommodation instead of a pink slip—that would not be available to a non-alcoholic.

*Adamczyk v. Chief, Baltimore County Police Dep't,* 952 F.Supp. 259, 265 (D.Md. 1997) has dealt with the same situation in like terms:

> To permit an employee to [request an accommodation after alcohol-induced misconduct] would allow any employee, who drunkenly misbehaved and whose employer had no knowledge at the time of such misbehavior that the employee was an alcoholic, to evade punishment by declaring himself disabled.

Otis was not obligated under ADA to offer Peyton treatment instead of termination just because it learned, after it had already reached a legitimate decision to fire him, that Peyton's alcoholism was the cause of his problems.

Indeed, it is not simply that Peyton divulged his disability only on the verge of—that is, immediately before—being fired. As set out in the *Facts* section, Peyton had been fired once before for absenteeism, he was aware of Otis' policy on absenteeism and he had been warned several times—once when a letter of termination was torn up. Hence he had to know that he was facing termination when he called Otis at 10 a.m. on April 29, 1997, and it was only then that he told Otis he had a problem with alcohol. For the purposes of accommodation, because prior misconduct was thus involved, Peyton effectively placed his

**922**

employer in the position of having no notice at all.

That scenario places this claim within the logic of *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996):

> An employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations—a duty dictated by common sense lest a disabled employee keep his disability a secret and sue later for failure to accommodate.

Just so, an employee cannot keep an alcoholism problem a secret up until the moment that he or she is in danger of being fired and expect the revelation and the threat of a lawsuit to erase all of his or her prenotice misconduct.

To summarize, Peyton's failure-to-accommodate claim fails precisely because ADA does not sanction misconduct by employees caused by alcoholism, but instead holds them to the same standard as everyone else. That claim too must be dismissed.

### Conclusion

Peyton has not identified a genuine issue of material fact that could establish, or even create a reasonable inference, (1) that Otis terminated his employment because of his presumed disability of alcoholism, (2) that Otis failed to accommodate that condition before terminating him or (3) that Otis failed to rehire him because of that problem. Hence Otis is entitled to a judgment as a matter of law. Its summary judgment motion as to all of Peyton's ADA claims is therefore granted, and this action is dismissed with prejudice.