John **BURTON**, Plaintiff,

v.

**SOUTHWESTERN BELL MOBILE SYSTEMS, INC. d/b/a Cellular One–Central Illinois, Defendant.**

No. 98–3055.

United States District Court, C.D. Illinois, Springfield Division.

Nov. 17, 1999.

James P. Baker, Springfield, IL, for plaintiff.

Thomas H. Wilson, Stephen R. Kaufmann, Michael T. Kokal, Springfield, IL, Carol J. Hansen Posegate, Springfield, IL, Camille N. Khodadad, Kathryn M. Moran, Chicago, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge.

Employee claims reverse discrimination.

However, he cannot show that employer's legitimate, non-discriminatory reasons for his termination were pretextual.

Summary judgment granted.

### I. BACKGROUND

Southwestern Bell Mobile Systems, Inc., d/b/a Cellular One–Central Illinois ("Cellular One") hired John Burton to be the branch manager of its Decatur, Illinois, store on October 1, 1996. Throughout his employment with Cellular One, Burton reported to Julie Chiaro, the manager of internal distribution; Chiaro reported to Kim Wenda, the director of sales; and Wenda reported to Ray Cagle, the vice president and general manager. As part of his job duties as a branch manager, Burton supervised two sales representatives, Larry Allen and Tracy Manns.[1]

On December 10, 1996, Yvette Casner, a then current Cellular One customer, visit-

---

1. Other than Manns, who is black, all of the individuals involved in this case, including Burton, are white.

ed Cellular One's Decatur store. Allen was the sales representative responsible for Casner's account, and he assisted her in disconnecting her existing telephone line and activating a new line.[2] On December 26, 1996, Robert Leady, also a then current Cellular One customer, visited the Decatur store seeking to upgrade his two existing telephone lines. Although Allen upgraded one of Leady's lines, his second line was disconnected and a new line was activated.[3]

On December 21, 1996, Bob Tobin, Cellular One's communications supervisor, sent Chiaro an e-mail message stating that Paula Reed, a Cellular One customer care representative, suspected Allen of engaging in churn activity and that Burton may have known that Allen was engaging in churn activity.[4] On December 26, 1996, Chiaro responded to Tobin in an e-mail message by stating that she needed some concrete facts and information before she could look into this matter. On January 3, 1997, Chiaro sent Burton an e-mail message requesting that he investigate the Casner and Leady contracts to determine whether there had been any improper churn activity on those accounts. That same day, Burton asked Allen whether he had engaged in any churn activity. Allen denied that he had.

On January 13, 1997, Burton sent Chiaro an e-mail message indicating (1) that Allen did not know that Casner had another line which she later canceled and (2) that Leady had presented a falsehood to Cellular One's credit and activations division. In short, Allen accused the customers of lying. However, after looking at the accounts on the computer, Burton concluded that Allen had engaged in churning on both the Casner and Leady accounts.[5]

On that same day, Manns telephoned Vicki Willis, Cellular One's human resources manager, regarding some concerns which he had about the activities which were occurring at the Decatur store. Accordingly, on January 14, 1997, Willis and Chiaro went to the Decatur store to meet with Manns. Before meeting with Manns, Willis and Chiaro met with Burton. During this meeting, Burton gave Willis a handwritten document setting forth the problems which he had encountered with Manns, including the fact that Manns arrived to work late, left work early, and took long lunches.

After meeting with Burton, Willis and Chiaro met with Manns. During this meeting, Manns told Willis and Chiaro that Burton was allowing Allen to engage in churning. Manns told Willis and Chiaro

2. Although Burton denies that Allen instructed Casner to deactivate her existing line and to activate a new line, he admits that Casner did, in fact, cancel her existing line and activated a new line. In his January 13, 1997, e-mail to Chiaro, Burton stated that Casner's boss, Ed Morgan of Morgan Transportation, had instructed her to cancel her telephone line so that she could activate a new line on the corporate account.

3. Although Burton denies that Allen advised Leady to disconnect one of his current lines and to activate a new line, he does not deny that Leady did, in fact, disconnect one of his current lines and activate a new line rather than upgrading both of his existing lines.

4. A "churn" occurs when an employee disconnects an existing telephone line and activates a new telephone line for the same customer. Churning is not permitted at Cellular

One because it results in a financial loss for the company and because it improperly inflates figures regarding new customers and quotas. A churned account is recorded as a new activation even though Cellular One has not in fact obtained a new customer.

5. A dispute exists as to the sequence of events surrounding Burton's knowledge of Allen's churning. Burton asserts that he sent Chiaro the January 13, 1997, e-mail message before he had looked at Casner's and Leady's computer accounts which revealed that Allen had engaged in churning and before he spoke with Chiaro and acknowledged that Allen had engaged in churning. Cellular One asserts that Burton looked at the computer records and spoke with Chiaro prior to his January 13, 1997, e-mail message to her; therefore, his January 13, 1997, e-mail message in which he denied that Allen engaged in churning activity was a lie.

that he heard Allen inform Burton that he (Allen) had instructed a female customer from Morgan Transportation to cancel her existing telephone line and activate a new line; Manns also told Willis and Chiaro that Allen had engaged in churning on Robert Leady's account. Manns stated that when he advised Burton that Allen was engaging in churning, Burton did not respond to his comment. Finally, Manns informed Willis and Chiaro that Allen did not report to work on December 26, 1996, and that Allen had arrived to work late on January 2, 1997.

After these two meetings, Willis reviewed Manns' and Allen's time sheets. Manns' time sheets indicated that he had worked his scheduled 8:00 a.m. to 5:00 p.m. shift every day. Manns' time sheets did not reflect that he had ever arrived to work late, had left work early, or had taken a long lunch. Willis' inspection also revealed that Burton had reviewed and signed Manns' time sheet every week.[6]

When Willis reviewed Allen's time sheets, they indicated that he had worked a full day on December 26, 1996, even though he had not worked at all that day.[7] Likewise, although Allen did not arrive to work until 10:30 a.m. on January 2, 1997, Burton allowed him to indicate on his time sheet that he had arrived at his scheduled starting time of 8:30 a.m. as compensation time for Allen's having to work during his lunch hour.[8]

On January 20, 1997, Willis telephoned Mara Wasar,[9] Cellular One's assigned asset protection manager, and informed her of the meetings which she and Chiaro had with Burton and Manns. Willis told Wasar that Burton had expressed concerns regarding Manns' attendance but that his allegations did not correspond with the information recorded on Manns' time sheets. Willis also told Wasar that Manns had expressed concerns about Allen's attendance. Willis explained that Allen's time sheets did not reflect any absences, but several employees had stated that Allen was not at work one day. Accordingly, Wasar asked Willis to draft a memorandum explaining her findings regarding Manns' and Allen's time sheets. Willis complied with Wasar's request and also faxed Allen's and Manns' time sheets to Wasar.

Sometime thereafter, Wasar spoke with Chiaro regarding the allegations of churning and Burton's improper conduct. Chiaro informed Wasar that the documents relating to Casner's and Leady's accounts established that Allen had engaged in churning and that Burton had denied this fact despite having reviewed evidence to the contrary. Based upon her response, Wasar asked Chiaro to gather more detailed information and prepare a summary of her findings with respect to Burton's apparent violations of the code of business conduct. Wasar also called Manns and Tracy Grandfield, a Cellular One employee, who informed Wasar that Allen was not at work on December 26, 1996. Moreover, both provided signed statements to Wasar verifying that Allen was absent from work on December 26, 1996. On January 23,

---

6. Burton asserts that he signed Manns' fraudulent time sheets pursuant to Chiaro's instruction. Burton claims that once he discovered that Manns was taking extended lunch hours but was not recording it on his time sheets, he informed Chiaro. However, Chiaro instructed him to sign Manns' time sheets notwithstanding the inaccuracies and informed him that she would handle the problems with Manns personally.

7. Although Burton knew that Allen had not worked that day, he asserts that he allowed Allen to be off from work that day as compensation for having to work through his lunch hour on several occasions.

8. Burton asserts that Allen was entitled to compensation time because Allen was forced to work during his lunch hour in order to have proper coverage for the store because Manns frequently took an hour and a half to two hours for lunch.

9. Wasar was responsible for investigating suspected violations of Cellular One's code of business conduct.

1997, Chiaro prepared a written summary of Burton's performance issues.

On January 24, 1997, Wasar, Willis, Chiaro, Wenda, and Cagle met with Burton at Cellular One's Springfield office. During the meeting, Wasar asked Burton about the Casner and Leady accounts. Burton first responded that he had not finished his investigation; however, he later stated that he had investigated the two accounts and that he did not find anything improper. Sometime later during that same meeting, Burton admitted that it appeared to him that the Casner and Leady accounts were not handled in accordance with company policy and that Allen had violated company policy.

Wasar also asked Burton about Allen's time sheets for December 26, 1996, and for January 2, 1997. Burton admitted that Allen had not worked on December 26, 1996, but asserted that it was possible that Allen had worked on a Saturday and that he had given Allen another day off. However, Allen's time sheet did not reflect that Burton had given Allen the day off. Likewise, Burton admitted that Allen did not arrive at work until 10:30 a.m. on January 2, 1997, but posited that perhaps Allen was owed some "comp" time. Finally, Burton gave the same response when questioned regarding Allen's time sheet for January 6, 1997.[10]

At the end of the meeting, Wasar suspended Burton. On January 31, 1997, Chiaro, Wenda, and Willis telephoned Burton and informed him that his employment with Cellular One was being terminated. Upon learning that Burton had been discharged, Allen walked off the job with Cellular One without notice and has never returned. Cellular One subsequently hired Colleen Pierceall to replace Burton. Burton has now filed the above-captioned case alleging that Cellular One fired him because of his race.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c); *see Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir.1997).

## III. ANALYSIS

Title VII of the 1964 Civil Rights Act makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a). A plaintiff may support a

---

**10.** Allen did not arrive to work on January 6, 1997, until some time after noon although his time sheet indicated that he had arrived at 8:30 a.m.

Title VII claim of discrimination either by offering direct evidence of discrimination, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or by the burden shifting method articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Burton does not assert that he has direct evidence of discrimination, and therefore, he relies upon the *McDonnell Douglas* burden shifting method in order to support his claim.

The United States Court of Appeals for the Seventh Circuit has explained the *McDonnell Douglas* burden shifting method as being a three step inquiry:

> First, a plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a "legitimate, nondiscriminatory reason" for discharging the plaintiff. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. Finally, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *see also Anderson*, 13 F.3d at 1122–24 (discussing pretext prong of *McDonnell Douglas*). Throughout, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. A goal of this burden-shifting approach is "to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 255–56, 101 S.Ct. at 1094–95.

*Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 302–03 (7th Cir.1996), quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir.1998).

Recently, the Seventh Circuit reaffirmed that Title VII provides a basis for reverse discrimination suits and resolved exactly what a white male plaintiff must show in order to maintain a *prima facie* case of reverse discrimination. In *Mills v. Health Care Serv. Corp.*, 171 F.3d 450 (7th Cir. 1999), the Seventh Circuit adopted a modified test utilized by other circuit courts for establishing a *prima facie* case of reverse discrimination. Specifically, the Seventh Circuit held that in order to establish a prima facie case of reverse discrimination, a plaintiff must show (1) background circumstances which support an inference of discrimination, (2) that he was qualified for the job in question or was meeting his employer's legitimate performance expectations, (3) that he suffered an adverse employment action, and (4) that the employer treated similarly situated employees outside the class more favorably. *Id.* at 457; *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir.1999); *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir.1998).

■ The Seventh Circuit admitted that exacting what constitutes background circumstances is not precise. *Mills*, 171 F.3d at 455. However, some examples of what constitutes background circumstances include " 'evidence indicating that the particular employer at issue has some reason or inclination to discriminate invidiously against whites' and 'evidence' indicating that there is something 'fishy' about the facts of the case at hand." *Id.*, quoting *Harding v. Gray*, 9 F.3d 150, 153 (D.C.Cir. 1993). Moreover, background evidence may be shown by offering evidence that "the person ultimately hired was clearly less qualified than the plaintiff, the hiring authority expressed intense interest in hiring a [minority or a] woman, and there was a pattern of hiring [minorities or] women

in the past." *Mills,* 171 F.3d at 455, citing *Duffy v. Wolle,* 123 F.3d 1026, 1036–37 (8th Cir.1997), *cert. denied* 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998). Finally, background circumstances can be established by offering evidence that the plaintiff was the only white employee in a department and that all of the decision makers were minorities. *Mills,* 171 F.3d at 455, citing *Reynolds v. School Dist. No. 1,* 69 F.3d 1523, 1534 (10th Cir.1995).

In the instant case, Cellular One argues that Burton has not met his burden of establishing a *prima facie* case. Specifically, Cellular One asserts that Burton has failed to show elements one, two, and four. Cellular One claims that Burton has not established any background circumstances which indicate that he was fired because he is white. Second, Cellular One argues that Burton was not meeting its legitimate employment expectations in that he permitted Allen to falsify his time sheets, he signed/approved Allen's time sheets knowing them to be false, and he allowed Allen to engage in improper churn activity, all which constitute a violation of Cellular One's code of business conduct. Finally, Cellular One asserts that Burton has failed to point to any similarly situated non-white employee who was treated more favorably than he was. Accordingly, Cellular One claims that it is entitled to summary judgment based upon Burton's failure to establish a *prima facie* case of reverse discrimination.

■ Contrary to Cellular's assertions, the Court finds that Burton has met his burden of establishing the first three elements of his *prima facie* case. First, Burton has established background circumstance in that he has offered evidence that on the first day of his employment, Chiaro advised him that although Cellular One had previously had difficulties with some black employees at the Decatur store, it could not terminate them because they were a protected minority. Chiaro denies telling Burton this, but the Court must at this stage resolve all factual disputes in Burton's favor. The Court believes that this evidence constitutes background circumstances sufficient to support an inference of discrimination and sufficient to satisfy the first element of Burton's *prima facie* case.

■ As for the second element, Cellular One's argument regarding Burton's failure to meet its legitimate employment expectations dovetails with its legitimate, non-discriminatory reason for firing him. *Vakharia v. Swedish Covenant Hosp.,* 190 F.3d 799, 1999 WL 695714, * 6 (7th Cir. Sept.9, 1999); *Roberts v. Separators, Inc.,* 172 F.3d 448, 451 (7th Cir.1999). At this stage, however, the Court believes that Burton has established the second prong of his *prima facie* case. Burton has offered evidence that when he became the Decatur store's branch manager, the store was in disarray, but by the time Cellular One fired him, the store's atmosphere was more professional, and sales had increased. Based upon this evidence or at least upon this disputed material fact, the Court finds that Burton has satisfied the second element of his *prima facie* case. *See Flores v. Preferred Technical Group,* 182 F.3d 512, 515 (7th Cir.1999) (holding on the facts that the plaintiff did not have to establish the second prong of her *prima facie* case because the issue was whether she was singled out for discipline because she is Hispanic); *see also EEOC v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 149 (7th Cir.1996) (holding that "this court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a prima facie case."). Finally, Burton was fired, thereby satisfying the third element of his *prima facie* case (a fact which Cellular One does not dispute).

■ However, the Court agrees with Cellular One that Burton has not established the fourth element of his *prima facie* case. Burton points to evidence that Cellular One treated Manns more favor-

ably than it treated him. Burton argues that although Manns was insubordinate, engaged in falsification of his time sheets, and was abusive toward customers, Cellular One never took any disciplinary action toward him. On the other hand, Cellular One's response to his alleged misconduct was swift and final, i.e., Cellular One terminated him.

■ Although Cellular One may have treated Burton and Manns differently, that fact is irrelevant because the two were not "similarly situated." In order for a plaintiff to establish that he was similarly situated with another employee, he must establish that "equally bad employees were treated more leniently." *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir.1993); *see Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994) (holding that "[i]n order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [female] employees who he alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.") *see also Mora v. Chicago Tribune*, 57 F.Supp.2d 626, 635 (N.D.Ill.1999) (holding that "to be 'similarly situated,' [a plaintiff] must show that these employees: (1) held the same or similar employment positions; (2) had similar employment histories; and (3) engaged in similar misconduct giving rise to the employment action."). Because Manns was Burton's subordinate, the two were not similarly situated. *See Owsiak v. Kimco Corp.*, 1997 WL 722990, *8 (N.D.Ill. Nov.13, 1997) (holding that a direct comparison for Title VII purposes between a supervisor and a subordinate is

inappropriate). Because Burton has not pointed to any non-white supervisor who was treated more favorably than he was, he has failed to establish the fourth prong of his *prima facie* case.[11]

■ Nevertheless, the Court finds that Burton has offered " 'indirect evidence sufficient to support a reasonable probability ... that but for [his] status [as a white male] the challenged employment decision' would not have occurred." *Mills*, 171 F.3d at 456, quoting *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997). Specifically, the Court finds that Burton's evidence that Chiaro told him on his first day of work that Cellular One could not fire insubordinate black employees because they were in a protected minority supports a reasonable probability that but for his status as a white male, he would not have been fired. In other words, based upon Chiaro's alleged comments, it is reasonable to assume that had Burton been black, he would not have been fired because Cellular One does not fire blacks based upon their status as a minority group, i.e., their race.

Furthermore, the Seventh Circuit has noted that the modified *McDonnell Douglas* test in a reverse discrimination case "is not to be interpreted in a constricting fashion." *Mills*, 171 F.3d at 457. The Seventh Circuit has explained that the modified test is "not meant to foreclose pursuit of legitimate Title VII claims by white men." *Id.* at 456; *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (holding that a plaintiff's burden of establishing these four elements is not onerous but is generally "quite easy to meet"). Accordingly, the Court finds that Burton has tendered sufficient indirect evidence to shift the burden to Cellular One to offer a

---

11. In addition, although the fact Burton's replacement was white does not prevent him from establishing his *prima facie* case, *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir.1996), it does at least raise an inference that his race was not the reason that he was terminated. *Williams v. Cuomo*, 961 F.Supp. 1241, 1246 (N.D.Ill.1997).

legitimate, non-discriminatory reason for his termination.

Cellular One has articulated not one, but three reasons for Burton's termination. Cellular One asserts (both now and at the time of his termination) that it fired Burton because he permitted Allen to falsify his time sheets, he signed/approved Allen's time sheets knowing that they were false, and he allowed Allen to engage in churning. *See Pilditch v. Board of Educ. of the City of Chicago*, 3 F.3d 1113, 1117 (7th Cir.1993) (holding that the defendant's burden is "quite light" and that "the mere articulation of the reason ... puts the onus back on the plaintiff to prove pretext.").

Because Cellular One has offered legitimate, non-discriminatory reasons for terminating Burton, the burden shifts back to him to prove, by a preponderance of the evidence, that the reasons offered by Cellular One were pretextual. The Seventh Circuit has explained that

> [a] plaintiff can establish pretext either directly, with evidence suggesting that retaliation or discrimination was the most likely motive for the termination, or indirectly, by showing that the employer's proffered reason was not worthy of belief. *See Johnson v. Sullivan*, 945 F.2d 976, 980 n. 5 (7th Cir.1991) (citations omitted). The indirect method requires some showing that "(1) the defendant's explanation has no basis in fact, or (2) the explanation was not the 'real reason', or (3) ... the reason stated was insufficient to warrant the [termination]." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir.1996) (citations omitted).

*Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir.1999).

Burton argues that Cellular One's reasons do not have any basis in fact and were insufficient to warrant his discharge. As for his involvement in Allen's churning, Burton asserts that he had no knowledge (and there is no evidence to the contrary) of Allen's churning until January 3, 1997, well after Allen had churned the two accounts. Moreover, a factual dispute exists as to why, if it was so concerned about churning, Cellular One disciplined him and did not discipline Allen, the one who actually churned the two accounts and profited thereby. Burton claims that this dichotomy suggests that his alleged involvement in churning was not the real reason and/or was an insufficient basis for his termination.

As for the reasons regarding the time sheets, Burton argues that Chiaro's instruction to him to sign Manns' fraudulent time sheet established that Cellular One condoned the signing of fraudulent time sheets. In addition, as with the alleged churning, Burton claims that a factual issue exists as to why, if it was so concerned about fraudulent time sheets, Cellular One disciplined him and did not discipline Allen, the one who actually falsified his time sheet and received pay for days which he did not work. Again, Burton asserts that this dichotomy suggests that his alleged involvement in allowing and signing Allen's falsified time sheets was not the real reason and/or was an insufficient basis for his termination.

Finally, Burton argues that notwithstanding Cellular One's reasons for his termination, evidence exists that race was the real reason for his discharge. Burton points to Chiaro's statement on his first day of work that she could not terminate insubordinate black employees because they belonged to a protected minority class. Moreover, although he complained to Chiaro about Manns' conduct, Cellular One took no disciplinary action against Manns. On the other hand, when Manns complained to Chiaro about his conduct, Cellular One terminated him. Accordingly, Burton argues that a reasonable trier of fact could conclude that there was disharmony in the Decatur store between a subordinate black employee and his white manager and that when confronted with this disharmony, Cellular One chose to

avoid racial friction by discharging the white manager rather than taking corrective action against the subordinate black employee.

However, the Court finds that Burton has failed to establish that Cellular One's reasons for discharging him based upon his permitting Allen to falsify his time sheets and signing Allen's fraudulent time sheets were pretextual. Prior to Burton's suspension and termination, Wasar (the person who made the decision to suspend and terminate Burton) received information that Allen had not reported to work on December 26, 1996. She also received a signed statement from Manns and Grandfield that Allen had not worked that day. Allen's time sheet did not denote anything unusual about that day or that he had been given the day off by Burton as compensatory time; it simply indicated that he had worked his regular 8:30 a.m. to 5:30 p.m. shift.[12]

Furthermore, at the January 24, 1997, meeting, Burton admitted that Allen had not worked on December 26, 1996, and that he had, nevertheless, signed Allen's time sheet. Although Burton asserted that it was possible that Allen had worked on Saturday and that he was giving Allen another day off, Burton did not inform Wasar that he was giving Allen the day off as compensation for having to cover for Manns' extended lunches, i.e., the justification upon which he now relies. Likewise, although Burton now asserts that Chiaro instructed him to sign Manns' fraudulent time sheet, thereby indicating an attitude of condoning the falsification of time sheets, Burton has presented no evidence that Wasar was aware of this fact. In fact, although Chiaro was in attendance at the January 24, 1997, meeting, Burton did not inform Wasar that Chiaro had instructed him to sign and approve of Manns' fraudulent time sheets.

Finally, it is undisputed that Chiaro did not make the decision to suspend or terminate Burton. Generally, only the motivation of the ultimate decision-maker is rele-

vant. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 396 (7th Cir. 1997). Burton has not presented any evidence that he ever informed Wasar, prior to his termination, that Chiaro had told him that Cellular One could not terminate insubordinate black employees because they belonged to a protected minority class. Burton has also failed to establish a causal relationship between the alleged statements made by Chiaro and the decision made by Wasar to fire him. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 779 (8th Cir.1995).

In short, Burton has failed to establish that Cellular One's decision-maker did not believe the reasons tendered for firing Burton. Because the Court has found that Burton has failed to establish that Cellular One's reasons for terminating him based upon the fraudulent time sheets were pretextual, the Court need not address Cellular One's reason for termination based upon Burton's alleged involvement in churning. *Mills*, 171 F.3d at 459.

*Ergo*, Defendant's Motion for Summary Judgment is ALLOWED. Pursuant to Federal Rule of Civil Procedure 56, summary judgment is hereby entered in Defendant's favor and against Plaintiff.

---

12. Allen's time sheet did indicate that he only took a half hour for lunch.