**Robert FOSTER, Plaintiff–Appellant,**

v.

**TRI–CLOVER INC., Defendant–Appellee.**

**No. 00–2610.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 2001.

Decided Jan. 31, 2001.

Before BAUER, MANION, DIANE P. WOOD, Circuit Judges.

### ORDER

Robert Foster, an African–American, sued his employer, Tri–Clover, Inc., for race discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e-2 *et seq.* The district court granted summary judgment to Tri–Clover on both counts, and we affirm.

In the fall of 1996, Tri–Clover was experiencing a business slowdown and concluded that it had to lay off 50 of its unionized employees. Under the collective bargaining agreement it had with the union, more senior employees had the right to "bump" more junior employees when jobs were being lost. This is exactly what happened to Foster when, on November 11, 1996, he was bumped from his "inside diameter" or "ID" polishing position in the valve factory at Tri–Clover's plant in Kenosha, Wisconsin. (The valve "factory" is really just one of three production areas in a single plant, the other two are the "fittings factory" and the "pump factory." An "ID polisher"

might be assigned to any of the three "factories.") Rather than be laid off, Foster took advantage of his bumping rights and took a position in the Shipping Department. That position paid $3 per hour less than his former job as an ID polisher. Foster concedes that he was properly bumped, but within a day of his bump he came to believe that there was at least one vacant ID polishing position available and that he was entitled to fill it. This led him to file a grievance with the company. Tri–Clover responded that, as was its right under the CBA, it had concluded that it did not wish to fill the vacant ID polisher position at that time.

After Foster's union declined to pursue the matter any further, Foster filed a grievance against the union with the National Labor Relations Board (NLRB) on December 6, 1996. On December 12, 1996, Tri–Clover created a new ID polisher position in the Valve Factory and Foster was recalled to fill that position. Still dissatisfied, Foster then filed a claim with Wisconsin Equal Rights Division (ERD), alleging that Tri–Clover should have reinstated him more promptly and its failure to do so was because of his race. In July of 1997, the ERD issued a probable cause determination in Foster's favor and set a hearing on his claim for October 30, 1997.

Starting on September 10, 1997, Plant Superintendent Roger Jackson (who, Foster alleges, was part of the committee back in late 1996 that had been deciding if or when to return Foster to his ID polisher position) began to make margin notes next to Foster's name on weekly "efficiency reports." These notes accurately indicated that Foster's efficiency was "very low" relative to his fellow ID polishers. After several weeks of such notations, Jackson instructed Foster's immediate supervisor, Carlos Hernandez, to talk to Foster about his low efficiency and to inform him that if

he did not improve he would face discipline. The last margin note in the record, written on October 30, 1997, was more positive, stating that Foster was "going in the right direction." In the end, nothing came of these notes: Foster was never formally reprimanded or disciplined, his pay was not affected, and the critical performance reviews had no effect on his opportunity for future pay increases or advancement at the company.

Believing that Jackson's notations and the conversation with Hernandez about his performance were in retaliation for his complaint to the ERD, Foster withdrew his ERD complaint before the October 30, 1997, hearing and filed a new charge with the EEOC. That charge alleged both racial discrimination and retaliation in violation of Title VII. The EEOC found probable cause to believe the statute had been violated, issued a right to sue letter, and this suit followed Because we are now considering the district court's grant of summary judgment for Tri–Clover, our review is under the *de novo* standard. *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir.1998). Summary judgment is proper if the record shows that "there is no genuine issue as to any material fact and that [a] moving party is entitled to judgment as a matter of law." *Id.*

Foster presented his claim under the familiar burden shifting method first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1986). In order to establish a *prima facie* case of employment discrimination, Foster had to present evidence that: 1) he is a member of a protected class; 2) he applied for, and was qualified for, an open position; 3) his application was rejected; and 4) Tri–Clover filled the position with a person not in his protected class, or the position remained open to others. *Mills v. Health Care Serv. Corp.*,

171 F.3d 450, 454 (7th Cir.1999). If he makes that showing, the burden shifts to Tri–Clover to articulate a legitimate, nondiscriminatory reason for the employment action. If it does so, Foster must then provide sufficient evidence to create a material issue as to whether Tri–Clover's proffered nondiscriminatory reason is pretextual. *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir.1994).

The district court found that Foster stumbled on the requirement that there was an available open position (here, as an ID polisher position) that he could have been given between November 11 and December 12, 1996. Foster himself had admitted to Tri–Clover during discovery that he was alleging only that he should have been placed in an ID polishing position within the valve factory. Tri–Clover specifically requested an admission from Foster that "Plaintiff does not believe he should have been a polisher in any department other than the valve department in November and December of 1996." In his Answer to Defendant's Request for Admissions, Foster answered this statement with an unqualified "Affirm."(Rec. 49, 3). The district court relied on this admission, and Foster has not argued on appeal either that this reliance was erroneous nor that we can or should disregard the admission. We therefore evaluate Foster's claim on this basis.

██ Looking only at the valve factory during the relevant period, it is clear that no ID polisher slots were available or open. Prior to the lay-offs there were two ID polisher positions in that factory, one filled by Foster and the other by a Caucasian ID polisher named Greg Paskiewitz. Both men were properly bumped from their positions by employees with greater seniority. Michael Haye bumped Foster and actually worked as an ID polisher during this period. Dean Mehring

bumped Paskiewitz, but as it happens Mehring was on sick leave at the time the bumping occurred. As a union employee, Mehring was entitled to exercise his bumping rights while on sick leave, this meant that Tri–Clover had to treat Paskiewitz's position as filled, even if no one was actually on the shop floor during Mehring's leave. Foster disregards this fact and insists that Paskiewitz's position was available, but he also concedes that Mehring was on sick leave and that Mehring was entitled to hold the slot even while absent. Given Foster's admission that his claim was limited to ID polishing slots in the valve factory and the undisputed evidence that Paskiewitz's position was not available to be assigned to any person other than Mehring, the district court properly concluded that Foster had failed meet his burden of showing that he applied for "an open position."

It would not help Foster even if there were some reason that justified ignoring his admission and looking at ID polisher positions throughout the Tri–Clover plant; it would only mean that his case fails on the "pretext" part of the analysis rather than at the *prima facie* case stage. Looking at the plant as a whole, the record suggests that following a confusing series of bumps and amended bumps, an ID polisher position was left vacant in the fittings factory. Karen Brasch, who had originally bumped into the position, was allowed to return to her pre-bump position after it became available again. Tri–Clover chose to leave that ID polisher position vacant, rather than to fill it with the next most senior employee entitled to bump into an ID polishing slot. We assume, favorably to Foster's allegations, that he would have been that person.

■ At best, however, this means that Foster successfully established his *prima facie* case. But, as most prudent defen-dants do, Tri–Clover offered legitimate business reasons for its employment decision even while it was contesting the basic *prima facie* case. Its managers testified, through affidavits, that Tri–Clover did not fill the vacant fittings factory position for the simple reason that production levels in fittings did not warrant such a move. Tri–Clover also offered evidence that the end-of-the-year work demands in the Shipping Department were such that there was a greater need for Foster's labor in that department than there was for another ID polisher in fittings. Foster failed to produce any direct evidence casting doubt on this explanation; he had no data or testimony, for example, showing that production had not in fact slowed in the fittings factory or that the labor requirements in shipping were not higher than normal. Compare *Stalter v. Wal–Mart Stores, Inc.,* 195 F.3d 285, 290 (7th Cir.1999).

■ Instead, Foster believes that he has circumstantial evidence that Tri–Clover's reasons were pretextual. He notes that he filed his charge against the union with the NLRB (claiming inadequate representation) a mere six days before he was reinstated to an ID polishing position. But we agree with the district court that any connection between the charge against the union and Tri–Clover's employment decisions is tenuous. Apart from other problems with that logical chain, it is beyond debate that Tri–Clover made the decision to leave the fittings job empty weeks before Foster filed his NLRB charge. Furthermore, there is no reason in this record to think that Tri–Clover knew about the charge against the union the minute it was filed.

Apart from his NLRB complaint, Foster offers only bits of deposition testimony from two minority managers at Tri–Clover who expressed the opinion that Tri–Clover had at unspecified times in the past treat-

ed its minority employees less well than its Caucasian employees. Neither of these managers was involved in the decision not to fill the vacant fittings factory position. Their testimony was general in nature: it neither related to the decision to leave the fittings factory position vacant, nor did it identify any specific managers who engaged in discriminatory conduct. General allegations of racism in the workplace like those made by Foster's witnesses are insufficient to create a material issue of fact with respect to pretext. See, e.g., *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir.1997)(affirming summary judgment where no evidence that manager who made discriminatory statement was not the manager who made decision to terminate employee); *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1155 (7th Cir.1989) (noting that in most cases actions and comments by employees not involved in a discharge decision cannot provide a basis for finding that decision maker had discriminatory intent); *La Montagne v.American Convenience Prods.*, 750 F.2d 1405, 1412 (7th Cir.1984) (same).

■ Foster's final effort to win a trial on his discrimination charge relies on the fact (which we accept as true for present purposes) that Tri–Clover used its discretion to protect a Caucasian ID polisher, Lance Dieder, in the pump factory. Dieder was going to be bumped to a lower paying job, but instead, Tri–Clover created a new ID polisher slot for him. Even assuming that this type of measure would have been possible in the valve factory also, and thus that there was a potential open spot there, Tri–Clover once again presented valid business reasons for its action. It explained that there was sufficient demand in the pump factory to warrant another ID polisher, that had Dieder exercised his bumping rights he would have displaced a skilled "pump inspector"

that Tri–Clover did not want to lose, and that Dieder had more seniority than Foster and thus was properly placed in the new position. Foster offered no more evidence to show that this justification was pretextual than he did to cast doubt on Tri–Clover's justification for not filling the fittings factory position.

Foster's retaliation claim was also properly dismissed by the district court. In order to make out a *prima facie* claim of retaliation, Foster must demonstrate that: 1) he engaged in protected activity; 2) he suffered an adverse employment action; and 3) there is a causal link between his protected activity and the adverse employment action. *Hunt–Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1014 (7th Cir.1997). As with the race discrimination claim, if Foster is able to make out a *prima facie* case, the burden shifts to Tri–Clover to articulate a legitimate business reason for the adverse employment action. If it can do so, Foster can survive summary judgment only by offering sufficient evidence that Tri–Clover's business justification is pretextual.

■ There is no dispute that Foster engaged in protected activity when he filed his discrimination claim with the ERD. The record is clear, however, that his choice to do so did not lead to any material adverse employment action. This is so even under the flexible approach we take to the concept. See, e.g., *Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir.1987) (finding series of negative changes in job characteristics sufficient to constitute materially adverse employment action); *Silk v. City of Chicago*, 194 F.3d 788, 800 (7th Cir.1999). The fact remains that "minor or trivial actions that make an employee unhappy are not sufficient to qualify" as material adverse employment actions. 194 F.3d at 800; *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.

1996)(same). Critical performance evaluations alone, even if inaccurate, fall into the latter category. *Smart v. Ball State University*, 89 F.3d 437, 442 (7th Cir.1996). The evidence on which Foster relies places him squarely within the holding of *Smart*.

Foster filed his ERD claim after he was restored to his ID polisher position in the valve factory. From December of 1996 until September of 1997, the record does not indicate that Foster had problems of any sort on the job. As we noted earlier, starting in September 1997, the plant superintendent, Jackson, began making notations on weekly efficiency reports that Foster's production rate was "very low," and those notations ultimately led to a conversation between Foster and his immediate supervisor, Hernandez. Foster was never actually disciplined; he was never formally reprimanded; he was never suspended; nor did he ever lose any pay as a result of Jackson's efforts to monitor his job performance. Foster did not allege, much less offer evidence, that the negative performance evaluations in any way affected his current or future prospects at Tri–Clover. Foster claimed only that the negative evaluations embarrassed him, in part because they were "posted" for other employees to see. Even if that were true, we have held that a "bruised ego" is not enough to constitute a material adverse employment action. *Flaherty v. Gas Research Institute*, 31 F.3d 451 (7th Cir.1994). Furthermore, by "posting" Foster appears to mean that the reports were kept in a pile on Hernandez's desk to which other employees had theoretical access. Foster presented no evidence that any employee other than Jackson, Hernandez, and himself ever knew anything about the critical reviews. Foster's claim of em-

barrassment is also weakened by the fact that, as far as the record reveals, Foster was consistently performing less well than his colleagues in ID polishing. In short, even if we assume very generously that he could show a causal link between his protected activity and the alleged consequences, Foster's retaliation claim is doomed because he cannot show that he suffered an adverse employment action.

We therefore AFFIRM the judgment of the district court.