**Willita D. SANDERS Plaintiff–Appellant,**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY, Defendant–Appellee.**

No. 01–4114.

United States Court of Appeals, Seventh Circuit.

Submitted June 20, 2002.*

Decided June 24, 2002.

Before WOOD, Jr., COFFEY, ROVNER, Circuit Judges.

**ORDER**

Willita Sanders, an African–American female, was a trainee in Norfolk Southern Railway Company's ("NSRC") accelerated conductor training ("ACT") program. At the completion of her training, NSRC declined to promote Sanders to conductor, citing a concern that her performance indicated that she was unable to operate a train in a safe manner. Sanders filed this action alleging race and sex discrimination in violation of 42 U.S.C. § 1981 and the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The district court granted summary judgment to NSRC, finding that Sanders had failed to show that NSRC's proffered reasons for its actions were pretext for discrimination. We affirm.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

In January 1999 Sanders applied for employment as a train conductor with NSRC. To be eligible for a conductor position, Sanders was required to satisfactorily complete a six-month training program. This program consisted of four phases, beginning with classroom training and ending with field training. At the end of the program, participants could be "promoted" to conductor positions but NSRC did not guarantee that all applicants would be granted employment.

The record demonstrates, at best, that Sanders earned widely mixed reviews of her performance throughout her training. Sanders began the ACT program with classroom instruction in Georgia and Indiana. The record shows that during her classroom training, Sanders performed each of the assigned tasks successfully. During the first two weeks of training, in fact, she earned designation as a "Safety Team Leader" due to her solid written performance. At the end of the field training portion of the ACT program, supervisor Fred Meyer solicited feedback from the conductors who worked with Sanders, including both verbal and written reviews. Sanders does not contest the testimony from numerous conductors who supervised her, showing that her field performance presented a safety risk. For example, Patricia Johnson, a white female supervisor, testified that Sanders was resistant to learning how to safely operate a train and on at least one occasion she slept on the job. This testimony was corroborated by Elbert Webster, a black male supervisor, who testified that Sanders was argumentative and unreceptive to learning, unable to perform basic tasks, and fell asleep while working with him. Supervisors Lisa Rameriz, Dane Boykins, Mark Burk, Byron Baudo, and James Arata also testified that their observation of Sanders's training left them with serious misgivings about her ability to safely perform

the job. Indeed, every single supervisor who participated in Sanders's field training recommended that her application for employment be denied.

Meyer rejected Sanders's application for employment as a conductor, stating that he was "honestly concerned about her welfare and the welfare of the employees that she works with and the general public." Sanders appealed this decision, proceeded to exhaust her administrative remedies, and she then filed this suit claiming that NSRC failed to hire her because of race and sex discrimination. The district court granted summary judgment to NSRC, concluding that Sanders failed to show that NSRC's reason for not hiring her—safety concerns—were a pretext for discrimination.

We review a grant of summary judgment *de novo,* evaluating the evidence in the light most favorable to Sanders. *See Jordan v. Summers,* 205 F.3d 337, 341 (7th Cir.2000). Summary judgment is appropriate when there is no dispute as to any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Sanders has conceded that she can point to no direct evidence of race or sex discrimination, and we therefore proceed using the *McDonnell Douglas* indirect method of proof, which requires that (1) the claimant must establish a prima facie case of discrimination, (2) the defendant must articulate a legitimate, non-discriminatory reason for its employment action, and (3) the claimant must prove that the employer's proffered reason is a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Gonzalez v. Ingersoll Mill. Mach. Co.,* 133 F.3d 1025, 1035 (7th Cir.1998) (applying same standards to Title VII and § 1981 claims). To establish a prima facie case of discrimination on the basis of a failure to hire,

Sanders had·to show that (1) she was a member of a protected class; (2) she was qualified for an open position for which she applied; (3) her application for employment was rejected; and (4) NSRC filled the position with someone not of Sanders's protected class, or left the position open. *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir.1999); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir.1999).

The district court did not decide whether Sanders had established a prima facie case, but moved directly to the issue of pretext because NSRC proffered legitimate non-discriminatory reasons for not promoting her. We have questioned this practice of bypassing the prima facie inquiry, and have instead required plaintiffs to establish each element of their case. *See Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir.1997). Sanders cannot be considered "qualified" for purposes of her prima facie case unless she can demonstrate that she can safely perform her duties. *See Skinner v. Ry. Labor Exec. Ass'n*, 489 U.S. 602, 620, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (railroad employees are "engaged in safety-sensitive tasks"). Sanders asserts that she was capable of safely performing all of the tasks required of a conductor, but she points only to the "Safety Team Leader" commendation she earned during the first few weeks of the classroom portion of her training. Merely meeting the classroom requirements of the ACT program, however, does not establish that Sanders was qualified for a conductor position. As Sanders concedes, she was also required to successfully complete the field training portion of the program. Sanders fails to address the safety concerns raised by all of her instructors throughout the field portion of her training program. The numerous reviews submitted to Fred Meyer, the decision-maker, detailed specific incidents in which Sanders failed to safely perform duties, fell asleep on the job, and refused to obey her supervisors' instructions. Sanders responded with nothing more than her unsubstantiated opinion that she was qualified for the position, and that is not enough to create a genuine issue of material fact and avoid summary judgment. *See Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir.1997).

Finally, Sanders argues on appeal for the first time that NSRC interfered with an alleged pre-existing employment contract, and that safety concerns are not a legitimate reason to reject an application for a conductor position. Because these arguments were not raised with the district court, they are waived. *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1009 n. 8 (7th Cir.2001).

AFFIRMED.