CAVANAGH, J.
(dissenting). I must dissent, not only from the majority’s holding, but also from Justice YOUNG’s assertion that we should turn a blind eye to racism. How I wish we all could live in Justice YOUNG’s utopian society where all races are treated equally, but I cannot ignore reality. I urge the reader to look beyond the surface appeal of Justice YOUNG’s simplistic argument and examine not only the text, but also the context of the Civil Rights Act. It is with regret that I acknowledge the relevance today of Clarence Darrow’s closing *236 argument at the 1926 trial of Detroiter Henry Sweet.[1] In discussing the tragedy, injustice, and oppression faced by African-Americans, he stated: “ ‘The law has made him equal, but man has not. And, after all, the last analysis is what has man done?-and not what has the law done?’ ” Peterson, ed, A Treasury of the World’s Great Speeches (New York: Simon and Schuster, Inc, 1965), p 740. This still rings true today.
Without any discussion of the relevant case law, this Court today overrules Allen v Comprehensive Health Services, 222 Mich App 426; 564 NW2d 914 (1997). The cursory nature of the majority opinion shows a complete lack of respect for the importance of today’s decision and the impact it will have on civil rights.
The majority overrules Allen because that case draws a distinction between plaintiffs on the basis of a minority class characteristic or trait, while the text of Michigan’s Civil Rights Act does not. Because today’s decision perverts the purpose of the Civil Rights Act and ignores precedent from this Court and the United States Supreme Court, I must respectfully dissent.
I. FACTS AND PROCEEDINGS
Because the majority opinion omits the relevant facts and circumstances, I provide them here. Plaintiff, a white male, filed this discrimination complaint following the promotion of a minority male to the position of sergeant at the Battle Creek Police Department. The procedure for promotions requires candidates to score at least seventy percent on a written examination and to successfully complete an oral examination. Candi *237 dates are ranked on the basis of their performance on these examinations and, pursuant to a collective bargaining agreement, defendant may choose any of the five top candidates from the list. Plaintiff and the minority candidate who was awarded the sergeant’s position in question were both in the top five on the eligibility list; plaintiff was ranked second at the time of the promotion and the minority candidate was ranked fifth.
At the close of discovery, defendant filed a motion for summary disposition pursuant to MCR 2.116(0(10). The trial court applied the background circumstances test from Allen and granted defendant’s motion. Plaintiff filed a motion for reconsideration after learning of the city’s affirmative action plan. The trial court denied plaintiffs motion for reconsideration, finding the affirmative action plan was never implemented by the city, and, even if it had been in place, it was not applicable to decisions pertaining to promotions.
Plaintiff appealed and the Court of Appeals affirmed the trial court’s grant of summary disposition.[2] The Court of Appeals applied the test from Allen and agreed with the trial court that plaintiff failed to provide sufficient evidence to create an issue of fact regarding whether defendant was the unusual employer who discriminates against the majority.
Plaintiff appealed to this Court and we granted leave, directing the parties to address whether the Allen “background circumstances” test is consistent with Michigan’s Civil Rights Act (CRA), MCL 37.2101 et seq., and, if so, whether it violates the Equal Protection Clause of the Michigan Constitution or the United States Constitution. 468 Mich 869 (2003).
*238 II. STANDARD OF REVIEW
This Court stated the applicable standard of review in Hazle v Ford Motor Co, 464 Mich 456, 461; 628 NW2d 515 (2001), in which we applied the test from McDonnell Douglas Corp v Green, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), to a racial discrimination claim:
We review de novo a trial court’s decision on a motion for summary disposition. A motion for summary disposition brought under MCR 2.116(0(10) tests the factual support of a claim. After reviewing the evidence in a light most favorable to the nonmoving party, a trial court may grant summary disposition under MCR 2.116(0(10) if there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law. Smith v Globe Life Ins Co, 460 Mich 446, 453; 597 NW2d 28 (1999).
III. ANALYSIS
Michigan’s CRA, at MCL 37.2202(1), provides that “[a]n employer shall not... (a) discriminate against an individual with respect to employment. . . because of. . . race . . . .” This language mirrors Title VII of the federal Civil Rights Act of 1964, which reads in pertinent part:
It shall be unlawful employment practices for an employer ... (1)... to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual’s race .... [42 USC 2000e-2(a).]
In some discrimination cases, there is direct evidence of racial bias. But in most discrimination cases, there is no direct evidence. Recognizing this, the United States Supreme Court developed the McDonnell Douglas *239 framework for examining discrimination claims where direct evidence of racial bias is lacking. McDonnell Douglas, supra.
Under the McDonnell Douglas test, a plaintiff must first offer a prima facie case of discrimination. To create a presumption of discrimination a plaintiff must present evidence “(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant’s qualifications.” McDonnell Douglas, supra at 802. Once the plaintiff has created a presumption of discrimination, the burden then shifts to the defendant to rebut that presumption by showing that there was a legitimate, nondiscriminatory reason for the employment action.
In Hazle, this Court applied the above framework to a racial discrimination claim filed pursuant to the CRA. The plaintiff in Hazle was required to present evidence that
(1) she belong[ed] to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. [Hazle, supra at 463.]
In applying the McDonnell Douglas framework, this Court recognized that varying facts in discrimination cases require courts to tailor the McDonnell Douglas framework to “fit the factual situation at hand.” Hazle, supra at 463 n 6.
Strict application of the McDonnell Douglas framework would preclude all reverse discrimination claims without direct evidence of discriminatory bias. Because *240 a majority plaintiff cannot prove that he belongs to a protected minority and because the United States Supreme Court has recognized that the federal civil rights act is not limited to minorities,[3] courts have adapted the first prong of the McDonnell Douglas test for reverse discrimination claims. However, the United States Supreme Court has not addressed the test to be used for reverse discrimination claims and there is no consensus among the federal circuit courts of appeals regarding how the McDonnell Douglas test should be adapted for reverse discrimination claims.
There are three general approaches followed by the federal circuits. The approach followed by a majority of the circuits is the “background circumstances” test, which requires a majority plaintiff to show background circumstances that support the suspicion that the defendant is the unusual employer who discriminates against the majority. This approach is followed by the United States Courts of Appeals for the District of Columbia, and the Sixth, Seventh, and Eighth circuits. Parker v Baltimore & Ohio R Co, 209 App DC 215; 652 F2d 1012 (1981); Murray v Thistledown Racing Club, Inc, 770 F2d 63, 66-68 (CA 6, 1985); Pierce v Commonwealth Life Ins Co, 40 F3d 796, 801 (CA 6, 1994); Mills v Health Care Service Corp, 171 F3d 450, 457 (CA 7, 1999); Duff v Wolle, 123 F3d 1026, 1036-1037 (CA 8, 1997). The second approach only requires a majority plaintiff to prove that he is a member of “a class.” This approach is followed by the Third and Eleventh circuits. Iadimarco v Runyon, 190 F3d 151, 163 (CA 3, 1999); Wilson v Bailey, 934 F2d 301, 304 (CA 11, 1991). The third approach allows a majority plaintiff to state a prima facie case in one of two ways, by using the *241 “background circumstances” test or by showing “indirect evidence sufficient to support a reasonable probability, that but for the plaintiffs status [as a member of the majority] the challenged action would have favored the plaintiff. . . Notari v Denver Water Dep’t, 971 F2d 585, 589 (CA 10, 1992). This test was developed by the Fourth Circuit in a traditional discrimination case and applied by the Tenth Circuit in the reverse discrimination context. Holmes v Bevilacqua, 794 F2d 142, 146 (CA 4, 1986); Notari, supra.
A. THE “BACKGROUND CIRCUMSTANCES” TEST
The “background circumstances” test was created by the Court of Appeals for the District of Columbia Circuit because the United States Supreme Court noted that the McDonnell Douglas factors have to be adjusted to fit varying factual scenarios and because strict application of the framework would eliminate all reverse discrimination claims. Parker, supra at 220. Under the “background circumstances” test a majority plaintiff claiming reverse discrimination can meet the first prong of establishing a prima facie case “when background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.” Id. Generally, “background circumstances” can be shown by evidence indicating that the employer has some reason or inclination to discriminate against the majority or by evidence indicating that there is something suspect about the particular case, which raises an inference of discrimination. See Harding v Gray, 9 F3d 150 (DC Cir, 1993).
B. THE “MEMBER OF A CLASS” APPROACH
Some courts have criticized the “background circumstances” test and have applied their own adaptations of *242 the McDonnell Douglas framework. The adaptation followed by the Third Circuit and the Eleventh Circuit essentially eliminates the first prong of the McDonnell Douglas framework. This adaptation was first applied by the Eleventh Circuit in Wilson, in which the court altered the first prong of the McDonnell Douglas test by requiring the plaintiff to prove that he belonged to “a class,” not a protected class or a minority class, simply a class. The same standard was applied by the Third Circuit in Iadimarco. The Third Circuit, held that
a plaintiff who brings a “reverse discrimination” suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude.. .that the defendant treated plaintiff “less favorably than others because of [his] race, color, religion, sex, or national origin.” Furnco [Constr Co v Waters, 438 US 567, 577; 98 S Ct 2943; 57 L Ed 2d 957 (1978)]. [Iadimarco, supra at 163.]
C. THE NOTARI ALTERNATIVE
The Fourth Circuit and the Tenth Circuit apply yet another variation of the McDonnell Douglas framework to reverse discrimination claims. See Holmes, supra at 146; Notari, supra at 589. This test acknowledges the presumption of discrimination implicit in McDonnell Douglas, but allows a reverse discrimination plaintiff to prove either background circumstances or specific facts that support a reasonable inference that, but for plaintiffs status as a member of the majority, the challenged decision would not have been made.
IV CONCLUSION
The diversity of opinion among the federal circuits is evidence of the difficulty and complexity of this issue, *243 yet the majority feels compelled by the text of Michigan’s Civil Rights Act to dismiss this issue with no analysis of the relevant case law. The text of the act also compels Justice YOUNG to assert that viewing things as they actually are is tantamount to discrimination. Today’s majority and Justice YOUNG both fail to acknowledge the historical context in which the Civil Rights Act was passed, as well as the pervasive and continuing discrimination rooted in that historical context. The majority remands this case to the circuit court with no guidance other than the fact that the “background circumstances” test should not be used. I respectfully dissent.

 Mr. Sweet was on trial for firing a fatal shot into a crowd of white people who were attempting to drive African-Americans from their homes in “white neighborhoods.” He was acquitted.

 Unpublished opinion per curiam, issued July 9, 2002 (Docket No. 227874).

 McDonald v Santa Fe Transportation Co, 42,7 US 273, 278-279; 96 S Ct 2574; 49 L Ed 2d 493 (1976).