In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2524

FRANCIS J. GOLLA,

*Plaintiff-Appellant*,

*v.*

OFFICE OF THE CHIEF JUDGE OF COOK
COUNTY, ILLINOIS and COOK COUNTY,
ILLINOIS,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 8149 — **Harry D. Leinenweber**, *Judge.*

ARGUED SEPTEMBER 28, 2017 — DECIDED NOVEMBER 15, 2017

Before BAUER, MANION, and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge.* Francis Joseph Golla brought this
Title VII race discrimination action against his former em-
ployer, the Office of the Chief Judge of Cook County, Illinois,
and Cook County, Illinois, itself for purposes of indemnifying

any judgment (collectively, "Defendants"). After discovery, the district court granted Defendants' motion for summary judgment. Golla appeals that decision, and we affirm.

## I. BACKGROUND

Golla's complaint alleged that the Office of the Chief Judge ("the Office") had engaged in intentional reverse racial discrimination by paying Deotis Taylor, an African-American male, a significantly higher salary than Golla, a white male, despite working in the same department and performing the same duties under essentially the same title.

The Office is the administrative arm of the Cook County circuit courts with numerous departments, including Adult Probation, Juvenile Probation, Social Services, Forensic Clinical Services, and the Chief Judge's Office. Golla, who has a law degree, started working in the Office in 1983 as a Court Coordinator. Golla's employment with the Office was terminated on March 16, 1995, but he was reinstated ten months after he filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the parties reached a settlement. As part of the settlement agreement, Golla was reinstated at a Grade 14 pay position. Golla assumed the title of Law Clerk I, and was assigned to assist in the jury room at other circuit courts, before moving into the juvenile courthouse.

In 2004, Golla transferred to the Social Services Department. While there, Golla retained the title of Law Clerk I, and continued to be paid at Grade 14 until he resigned on May 31, 2013. Golla's duties in the Social Services Department were

administrative in nature, and included filing, creating reports, case initialization, and processing intakes.

Deotis Taylor began working at the Office in 1978 as a Probation Officer, and then became a Jury Room Manager in 1998. Taylor's personnel records indicated that in 1998, he was paid at Grade 22. Taylor left the Office in 1999 to run for Illinois State Senate.

The Office rehired Taylor in 2005, and assigned him to the Social Services Department. Taylor assumed the title Legal Systems Analyst at a Grade 22 pay position. He remained in that position until he retired on September 26, 2013. Taylor's duties in the Social Services Department were also administrative, and included processing case files to courtrooms, conducting criminal background checks, and organizing and disposing of files.

Despite the different formal titles, Golla and Taylor were both listed in the Social Services directory under the title Administrative Assistant. In addition, both Golla and Taylor worked on intake forms, called SCERTs, on a daily basis. These forms were generated when an individual who had been sentenced did not physically appear at the Social Services Department for intake. Taylor wrote up the SCERT form, assigned a caseworker to it, and conducted a criminal background check on the individual. Golla received completed SCERTs and entered the information into a computer system.

Vanessa Whitehead, who is African-American, served as the Deputy Director of Management Services in the Social Services Department, in which position she was the direct supervisor of both Golla and Taylor. Whitehead testified in her

deposition that she had no role in determining an employee's pay grade.

In support of their motion for summary judgment, Defendants introduced an affidavit from Sharon Hoffman, who was the Assistant Director of the Social Services Department until March, 2014. Hoffman's affidavit affirmed that the Social Services Department had no control over an employee's pay grade. Instead, employees who transferred into the Social Services Department retained their pay grade from their prior department. Hoffman's affidavit also listed seventeen Social Services employees, both white and African-American, who performed the same or similar administrative duties as Golla at a lower pay grade.

In 2009, Golla learned that Taylor was making more money than he was. On June 9, 2009, Whitehead overheard Golla talking with Taylor and others about their salaries after a website posted the salaries of all Cook County employees. On July 7, 2009, Golla wrote a letter to the Chief Judge claiming that Whitehead publicly announced that she knew Taylor made more money than him, but Whitehead denied making this statement, or any statements about the pay disparity between Golla and Taylor. Whitehead stated that she was only informed of the pay disparity when Golla approached her with that information.

When Golla was asked during his deposition whether anyone in the workplace made racial comments towards him, he answered:

> No. You know, nothing direct racial. Now, [Whitehead] had on numerous occasions said

that all my life people have been standing in my way, and they all looked exactly like you. Is that racial? Is that gender? Is that age? That's what she would say, you are a nobody, you are a nothing, you are not an attorney. She would say it repeatedly, loudly and to anybody who was around to hear it. But is that racial? No. It's demeaning. It's disgusting. It's degrading. But no, not directly racial. No nooses hanging anywhere.

On May 29, 2009, Golla filed a discrimination complaint with the Illinois Department of Human Rights and the EEOC. The EEOC issued Golla a right-to-sue letter on August 11, 2011. Golla filed his first complaint in the district court on November 15, 2011, which was amended a number of times thereafter. The operative complaint contained one count of race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); and, one count of a violation of Golla's Equal Protection and First Amendment rights under 42 U.S.C. § 1983. The district court dismissed the § 1983 count and allowed the Title VII count to proceed.

On June 18, 2015, the district court granted summary judgment in favor of Defendants. The court found no direct evidence of reverse racial discrimination that resulted in the pay disparity. The court also found that Golla had failed to establish a prima facie case of reverse racial discrimination under the indirect method of proof, a modified version of a framework first established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 456–57 (7th Cir. 1999).

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2016). The question on a motion for summary judgment is whether the moving party has shown there is "no genuine dispute as to any material fact," and is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). We construe all factual disputes and draw all reasonable inferences in favor of the non-moving party. *Cole*, 838 F.3d at 895.

Title VII prohibits an employer from discriminating against an employee on the basis of race with respect to their compensation. 42 U.S.C. § 2000e-2(a)(1). The district court analyzed Golla's race discrimination claim under both the "direct" and "indirect" methods of proof. *See Golla v. Chief Judge of Cook Cty.*, No. 11 C 8149, 2015 WL 3814650, at *3–6 (N.D. Ill. June 18, 2015).

However, after the district court had granted summary judgment, we held that the "direct" and "indirect" methods should no longer be treated as distinct legal standards. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016). Instead of separating evidence under different methods of proof, we held that "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.* at 765. We clarified that the legal standard is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race … caused the … adverse employment action." *Id.* Importantly, *Ortiz* made clear that its holding did not alter *McDonnell*

*Douglas* or displace the indirect method of establishing a prima facie case of discrimination. *Id.* at 766. Instead, the indirect method remains "a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Accordingly, we will evaluate Golla's claim under the approach set forth in *Ortiz*.

Golla argues that he presented sufficient evidence of race discrimination within the Social Services Department to survive summary judgment. Golla stresses the similarities in job titles and duties with Taylor and surmises that the only explanation for Taylor's higher pay grade is his race. Golla also points to the comments of his African-American supervisor, Whitehead, as evidence of racial animus in the Social Services Department.

Considering the evidence as a whole, we find that Golla has not presented sufficient evidence from which a reasonable factfinder could conclude Golla received lower pay than Taylor because of his race. Golla's reverse racial discrimination claim is premised solely on Taylor: one African-American employee in the Social Services Department who performed similar duties and received a higher salary. Golla presented no evidence, beyond the fact that he is white and Taylor is African-American, to demonstrate that race contributed to disparity in their pay.

The evidence showed that Golla's Grade 14 pay was established in 1996 pursuant to a settlement agreement with the Office. Taylor's Grade 22 was set in 1998 when he was a

Jury Room Manager. When Golla and Taylor were placed in the Social Services Department in 2004 and 2005, respectively, they maintained their pay grades that had been established years prior. Golla presented no evidence that Whitehead, or anyone in the Social Services Department, was a decision-maker on employee compensation. Golla's only evidence that Whitehead played any role at all in determining particular pay grades is a single line statement from the deposition of Bruce Wisniewski, the Office's HR Administrator, that can be read to suggest Whitehead could have recommended a higher pay grade for Golla. But Golla has presented no evidence that Whitehead every knowingly withheld such a recommendation, or that she even knew she had that potential influence.

Moreover, Golla did not produce any evidence that the Social Services Department engaged in any systematic pattern or maintained a policy of reverse racial discrimination. In fact, Defendants provided evidence that many other employees in the Social Services Department with duties similar to Golla, both white and African-American, were compensated at a lower pay grade than Golla.

Whitehead's comments to Golla lend no support to his claim of reverse racial discrimination. Golla argues that Whitehead displayed racial animus when she told him "all my life people have been standing in my way, and they all looked exactly like you." However, Golla presented no evidence that Whitehead ever made this statement in reference to Golla's pay. *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006). In fact, Whitehead had no decision-making role in determining pay grades, and she was unaware of the disparity in their pay until Golla informed her of it. Moreover, White-

head's comment is open-ended, and there is no evidence that Whitehead was referring to Golla's race when she made the ambiguous remark. Finally, Golla confirmed at his deposition that this comment was not racially motivated when he stated: "[I]s that racial? No. It's demeaning. It's disgusting. It's degrading. But no, not directly racial."

In short, the evidence as a whole was insufficient for a reasonable jury to conclude that the Office paid Golla at a lower pay grade than Taylor on account of his race. Therefore, Defendants are entitled to summary judgment.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Defendants.